## AZIMOW *v.* STOKER

[No. 19,127. Filed May 5, 1960. Rehearing denied June 8, 1960. Transfer denied October 11, 1960.]

*P. B. O'Neill, John E. Scott, William J. Norton, Paul E. Schrenker* and *O'Neill, Scott, Schrenker & Norton,* all of Anderson, for appellant.

*Reuben H. Berman, Roy Dempsey,* both of Marion, *Robert Austin* and *Samuel Johnson,* both of Anderson, for appellee.

BIERLY, P. J.—Floyd Stoker, appellee, brought this action in the Madison Circuit Court of Madison County against Ben Azimow, appellant, for damages resulting from an alleged malicious prosecution. The case went to trial before a jury on appellee's amended complaint and an answer in general denial by the appellant. The jury returned a verdict in favor of the appellee and assessed his damages in the sum of $7,500.00 against the appellant. Consistent judgment was rendered by the court on the verdict.

The record discloses that the appellee was arrested on the 24th day of November, 1954, on a criminal warrant issued and predicated upon an affidavit in two

counts, charging him in one count with grand larceny and on a second count with horse stealing.

Appellant was the affiant to said affidavit. Upon the basis of the said criminal warrant appellee was lodged in the Grant County, Indiana jail for several hours prior to his release on posting a $1,000.00 bail bond. Upon arraignment appellee entered a not guilty plea to both counts. For lack of satisfactory evidence the Prosecuting Attorney of Grant Judicial Court of Grant County moved the court to dismiss the charges against the appellee on the 25th day of March, 1955. The court sustained the motion.

Appellant, in the case at bar, filed a timely motion for a new trial, which motion was overruled. Of his specifications in his motion for a new trial, appellant relies on those numbered 2, 3, 5, and 8.

Appellant's Assignment of Errors is in overruling appellant's motion for a new trial.

The specifications which were preserved in the argument as set forth in this motion were as follows:

"2. Newly discovered evidence, material to the defendant, which he could not, with reasonable diligence, have discovered and produced at the trial. . . ."

"3. Irregularities in the proceedings of the court and abuse of discretion by the court by which the defendant was prevented from having a fair trial. . . ."

"5. The verdict of the jury is not sustained by sufficient evidence."

"8. Errors at law occurring at the trial, such as the court's remarks and the action by the court in sustaining objections to certain questions propounded by the defendant on cross-examination of the appellant."

We first consider said specification No. 2. Two affidavits concerning the newly discovered evidence were

attached to the motion for a new trial, one executed by appellant and the other by his attorney, Paul E. Schrenker. Each of these affidavits alleged matter relative to an asserted conversation between one William Gregory, a witness for appellee at the trial, and the affiants. It is stated in the affidavits that the witness, Gregory, was mistaken in his testimony at the trial in reference to a certain visit made to his home by one Filmore Davis, a member of the Indiana State Police; that should a new trial be granted by the court, Gregory would change his testimony; and that such testimony will affect the result on a new trial. It is also averred in the affidavit of said Paul E. Schrenker that William Gregory refused to make an affidavit as "it would cause him great trouble."

It has been held by our Supreme Court that the granting of a new trial on the ground of newly discovered evidence lies within the sound judicial discretion of the trial court; that the nature of the evidence warranting the granting of the motion for a new trial on such ground, the newly discovered evidence, must be: (1) That such evidence must clearly appear sufficient to probably effect a change in the result of the previous trial, (2) That such evidence must appear not merely to be cumulative or impeaching, and (3) It must appear that the failure to produce the evidence at the trial was not due to a lack of reasonable diligence on the part of the defendant. *Bowling* v. *State* (1942), 220 Ind. 497, 44 N. E. 2d 171; *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 41 N. E. 2d 805. In *Bartley, supra,* the court said:

> "It is well settled that applications for a new trial on the ground of newly discovered evidence are looked upon with disfavor. . . . Granting such a motion is within the sound discretion of the trial court whose ruling *will not be*

*disturbed except for abuse of such discretion."* (Our emphasis.)

In *Matis* v. *Yelasich* (1956), 126 Ind. App. 287, 292, 132 N. E. 2d 728, relative to newly discovered evidence, the court said:

"One who seeks a new trial on the grounds of newly-discovered evidence *must first show the use of due diligence by setting out the facts constituting the same* so that the trial court, in passing thereon, may determine from all the facts presented whether due diligence was reasonably used." (Our emphasis.)

In the case at bar, it appears from the affidavits that the alleged evidence on which the appellant requests a new trial is merely an impeachment of a witness of his own testimony given during the previous trial. Neither of the said affidavits was executed by the witness named in said affidavits who supposedly would change his testimony, but said affidavits were executed by persons who had conversed with such witness about his testimony during the previous trial.

The case *Sprague* v. *Sowash* (1952), 122 Ind. App. 519, 106 N. E. 2d 471, well states the controlling factors in situations where it is alleged that a witness will change his testimony in a subsequent trial but has not executed an affidavit to that effect. This action involved a controversy relative to the quality of certain chicken feed. The witness had prepared an affidavit but refused to execute it. The content presented in the affidavit was in variance somewhat to the previous testimony of the witness. In its opinion in that case the court said:

"The showing as to the unsigned document is not sufficient to compel the granting of a new trial. An affidavit is required unless a sufficient excuse is shown for the failure to file it. The refusal of the witness to make the affidavit

is not a sufficient excuse, as the court, upon application, will compel a witness to make an affidavit as to such facts as are within his knowledge. *Rater* v. *The State* (1875), 49 Ind. 507; *Huston* v. *Vail et al.* (1875), 51 Ind. 299; *Gardner* v. *The State ex rel. Stottler* (1884), 94 Ind. 489; *Williams* v. *State* (1923), 193 Ind. 670, 139 N. E. 657. No such application was made in this case."

The court in the *Sprague* v. *Sowash, supra,* case further cites extensive authority to the effect that manifest abuse of judicial discretion by the trial court must be shown before an appeal court may be justified in reversing the trial court upon the ground of newly discovered evidence. In the case at bar, no application had been made to the trial court to require the witness, Gregory, to execute an affidavit containing the purported evidence he would give contrary to his testimony in the original trial. Therefore, for reasons heretofore stated, and in line with the opinion of the court in the Sprague case above, we conclude that appellant has failed to produce a sufficient showing that the trial court abused its judicial discretion in rejecting newly discovered evidence as the ground supporting the motion for a new trial. We, therefore, conclude that no error is shown by the trial court in its ruling denying a motion for a new trial based on the ground of newly discovered evidence.

The third specification under the motion for a new trial and which was argued by the appellant, challenged certain statements made by the trial judge in the course of the trial. In the argument portion of his brief, relative to this specification, appellant has failed to point out a single instance where he objected to the comment of the judge nor has he shown by the record that he objected to the judge's comment. The record reveals the following pertinent reference to the matter:

"Judge: The court is going to help both of you. Mr. Schrenker, your reference to the conditional examination has been irrelevant and immaterial.

"Mr. Schrenker: The court has no right to comment on this. If they thought it objectionable they should have objected to it."

We are not inclined that a statement such as this constitutes a valid objection. Said statement appears to be nothing more than a passing comment by ■ counsel rather than a stated formal objection to the court's remark, as appellant was authorized to do. If a proper foundation has not been laid presaging an appeal, an appellate tribunal is not empowered to assume the opposite. In cases where the misconduct has been alleged or charged, a motion to withdraw the submission of the cause from the jury has been an elemental condition for a proper presentation of error upon appeal. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N. E. 2d 134; *Ostrowski et al.* v. *Estate of Ostrowski et al.* (1955), 126 Ind. App. 413, 131 N. E. 2d 345; *Higshew* v. *Kushto* (1956), 126 Ind. App. 584, 131 N. E. 2d 652. The rule in regard to alleged misconduct of the trial judge, however, appears to be somewhat more liberal. *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848; *Rhodes* v. *State* (1930), 202 Ind. 159, 171 N. E. 301; *Brunker* v. *Cummins* (1892), 133 Ind. 443, 32 N. E. 732; *Aylesworth and Others* v. *Brown and Another* (1869), 31 Ind. 270; *The City of Frankfort* v. *Coleman* (1897), 19 Ind. App. 368, 49 N. E. 474; *Kintner* v. *The State, ex rel. Ripperdan* (1873), 45 Ind. 175.

We note that the last four cases above mentioned were civil actions; that in each of them exceptions were

taken to the ruling of the court. However, in the case of *Brunker* v. *Cummins, supra,* the official report is silent as to whether or not the objection or exception to the comments of the judge was interposed, but a record search reveals that the comment of the court was immediately challenged by proper objection and exception thereto. The requirement of taking an exception after an objection to the ruling of a court had been interposed but negated was eliminated by Rule 1-5 of the Supreme Court. However, Rule 1-5 does not obviate the requirement of a proper and timely objection. *Podell* v. *Boger, etc., et al.* (1957), 128 Ind. App. 116, 145 N. E. 2d 730.

*Rhodes* v. *State, supra,* and *Wilson* v. *State, supra,* were both criminal cases in which there were no pertinent and timely objections proferred to the comments of the trial judge. In the Rhodes's case, the appellant had received a death sentence, but, nevertheless, Judge Martin, in his dissenting opinion strongly criticized the majority for allowing a consideration of the error in the absence of an objection of the court's ruling. The attorney for the defendant in the Wilson case failed to challenge the comment of the court by an objection. Judge Richman, speaking for the court, used controlling language in these words:

"With such a record before us, what is our duty? The easy course would have been to examine the motion for new trial and, having found that the errors relied upon are not mentioned therein, to have affirmed the judgment. For such a decision there are many precedents. But in a case involving an appellant's life or liberty we may not ignore prejudicial errors affecting his constitutional rights when, as here, they are clearly and adequately presented in appellant's brief with supporting bill of exceptions. *The procedural rules that would prevent their consideration must give*

*way to the fundamental principles of due process. For this course also there are precedents."* (Our emphasis.)

In the case at bar, no issue of life or liberty is involved. It appears to us that there exists no reason in civil actions to expand such precedents in criminal actions so as to permit consideration of alleged errors to the ruling of the court, when the record fails to disclose proper objections by the party adversely affected by such ruling or rules.

Appellant argues his Specification No. 8 in his motion for a new trial in two parts. In the first part, he once again discussed the remarks proferred by the trial judge relative to the use of the conditional examination and to which no objections were tendered. We have heretofore fully discussed this matter, hence, a further consideration thereof would add nothing to this opinion. The second portion of appellant's argument, likewise, relates to the use of the conditional examination in situations where objections were interposed by appellee and sustained by the court. Particular emphasis is placed upon testimony of the appellee, Floyd Stoker. Questions were read from the conditional examination relative to information asked in the appellee's conditional examination of June 22, 1956. From the records, it appears that appellant's counsel attempted at several times to make use of the conditional examination to elicit information from appellee concerning his statements on that date. By his persistence in this line of questioning, it appears counsel for appellant gained some advantage thereby.

The record pertinent thereof follows:

"Q.   Getting back to question 197, then, I will ask you if on June 22, 1956, under oath, before Ruby Rose, in her statement taken down in

shorthand and later transcribed into type-written form, in answer to that question, 'What did you tell him then?,' meaning Mr. Eloph, the tenant at the farm, your answer was, 'I told him I had bought them.' "

"OBJECTION: By Mr. Austin, for the reason it is completely meaningless."

"OBJECTION SUSTAINED."

"Q. All right. To previous question, number 195, I asked you, 'You did represent to the tenant that you had purchased the ponies from Ben a couple of weeks before?,' and your answer was, 'I did not represent anything to the tenant.' " "Question 196, You did not at any time tell the tenant?' and you answered, 'No, not until he told me what to do;' and I will ask you again if you did not say then, 'I told him I had bought them'?

"OBJECTION: By Mr. Austin, for the reason the time is not established."

"Mr. Schrenker: I just read it—June 22, 1956."

"Judge: That is when the conditional examination was taken.

"Mr. Austin: To what does it refer?

"Mr. Schrenker: To the statement. He denies he made that statement.

"Judge: If that is the form of your question, it may be answered.

"Q. Did you make that statement on June 22, 1956, between the hours of one and two o'clock, p.m.?

"A. Yes, sir.

"Q. Did you make this statement, that I have just read to you, that 'I told him I had already bought them?' "

"A. After the first conversation, I told him, yes.

"Q. You made that statement, 'I told him I had bought them?' "

"A. That is right."

The question was answered fully by the witness. An interesting inquiry thus presents itself as to how appellant can justify a predication of error upon his ▉ contention in this matter. It appears that the argument of the appellant is thus more directed toward the demeanor of the trial judge than toward his rulings relative to the use of the conditional examination. This phase of alleged error has heretofore been discussed and disposed of.

Appellant further challenges the ruling of the court in sustaining an objection to a question propounded by the appellant to the appellee in that the appellant was denied his right of cross-examination of the appellee. It must here be pointed out that the objections stated in appellant's brief are at variance with that disclosed in the transcript in reference to the testimony of the appellee. In appellant's brief, the question is stated thus:

"Q. Did Mr. Gregory give you the value in that conversation?

"OBJECTION: By Mr. Berman, for the reason he is arguing."

The transcript discloses that the sequence of the testimony is actually as follows:

"Q. Did you consider it a good buy for the money?

"A. No, I did not.

"Q. Well, it was only worth two hundred (200) dollars, wasn't it?

"OBJECTION: By Mr. Berman, for the reason he is arguing.

"OBJECTION SUSTAINED."

"Q. Did Mr. Gregory give you the value in that conversation?

"OBJECTION: By Mr. Berman.
"OBJECTION SUSTAINED."

Likewise, the appellant failed to argue or state upon what grounds he believes that the court erred in sustaining the objection to the question in the motion for a new trial. It thus follows that no question thence was preserved by appellant for this appeal. *Johnson* v. *Glassley* (1948), 118 Ind. App. 704, 83 N. E. 2d 488.

Specification No. 5 in appellant's motion for a new trial to-wit:

"5. The verdict of the jury is not sustained by sufficient evidence,"

was listed by the appellant in the argument portion of his brief, but was not formally discussed, and hence, by the Supreme Court Rules the same is considered waived.

We are of the opinion that, in the case at bar, the evidence most favorable to appellee contained sufficient evidence of probative value upon which the jury was justified in rendering the verdict in favor of the appellee. We adopt the statement made in *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, wherein the court said:

"There was evidence of probative value which went to the jury . . . and from which evidence the jury could draw reasonable inferences, and, even if the evidence be considered such that reasonable men could form different conclusions therefrom, yet, it is neither our prerogative nor privilege to substitute our judgment for that of the jury."

We are of the opinion that the court in this cause did not commit reversible error, and we are of the further

opinion that the verdict of the jury and the judgment of the court should be sustained.

Judgment affirmed.

Kelley, Gonas and Smith, JJ., concur.

·NOTE.—Reported in 166 N. E. 2d 887.